# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| In re: Pablo Jesus Inga, Sr. | Case No. 17-35936-KLP |
| Debtor, | Chapter 13 |
| Pablo Jesus Inga, Sr. | |
| Plaintiff, | |
| v. | Ad. Pro. No. _____ |
| Hilvanim Group, Inc., formerly known as Centerdon Group, Inc. | |
| SERVE: | |
| Hector Carreon, Reg. Agent<br>20101 E. Valley Blvd, #A<br>Walnut, CA 91789 | |
| And | |
| Jack Howard Karpeles | |
| SERVE: | |
| Jack Howard Karpeles, President<br>1800 Century Park East #600<br>Los Angeles, California 90067 | |

## COMPLAINT

Pablo Jesus Inga, Sr., by counsel, moves this Court for judgment against the Defendant on the grounds and in the amount as hereinafter set forth:

## PARTIES

1. The Plaintiff is an individual who resides in Spotsylvania County, Virginia, and he owes money to one or more creditors.

2. The Defendant Centerdon Group, Inc. (hereinafter "GCI") is a California corporation. CGI conducts business in the Commonwealth of Virginia and took wages that Plaintiff earned in the Commonwealth of Virginia.

3. Defendant Jack Howard Karpeles is an attorney licensed to practice law in the state of California. According to the records of the California Secretary of State, Mr. Karpeles during the times in question was the chief executive officer of CGI.

## JURISDICTION

4. This adversary proceeding arises from the chapter 13 case that is currently pending before this Court.

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C.§§ 157(b)(2)(B) & (E) and 11 U.S.C. §§ 542 and 547.

6. This is a core proceeding under 28 U.S.C. § 157(b)(2).

7. The Debtor filed his chapter 13 petition on November 28, 2017. [BK Case No. 17-12809, Doc 1].

8. This is an action brought by Plaintiff Pablo Jesus Inga, Sr. to recover actual, statutory, and punitive damages from Defendants for, among other things, making false promises to him about settling his debts and engaging in the unauthorized practice of law in the Commonwealth of Virginia.

## COMMON FACTS

9. On or about April 7, 2017, Inga entered into an engagement agreement with CGI. Inga decided to retain the services of Defendant, rather than another company, because Defendant indicated that it was a law firm.

10. CGI told Mr. Inga that if Mr. Inga retained Defendant's services, Defendant would settle Mr. Inga's debts for a fraction of what he currently owed.

11. Mr. Inga received the retainer agreement ("agreement") from Charles R. Juarez, Jr.. A copy of this document is attached hereto as Exhibit A.

12. The agreement was included with a packet of information ("the packet") about Defendant and the services that it provides. The packet is attached as Exhibit B.

13. The information in the packet and the agreement led Mr. Inga to reasonably believe that if he retained Defendant, he would be working with an entity licensed to practice law in the Commonwealth of Virginia.

14. Mr. Inga relied on Defendant's representations to this effect when he chose to retain Defendant's services.

15. In fact, CGI has never been authorized to conduct business in the

commonwealth of Virginia.

16. The Virginia State Bar Membership Committee confirms that CGI **does not** have a certificate of good standing with the Virginia State Bar and never did possess a certificate of good standing.

17. The agreement between Defendant and Mr. Inga outlines a Debt Management Plan as that term is defined in Va. Code§6.2-2000.

18. Pursuant to Va. Code§ 6.2-2001, Defendant was required to obtain a license from the Virginia State Corporation Commission before providing a Debt Management Plan to a consumer residing in the Commonwealth of Virginia.

19. Defendant did not have the requisite license at any time relevant hereto.

20. Pursuant to Va. Code §6.2-2014(10), Defendant was prohibited from providing legal advice to Mr. Inga.

21. The agreement purports to be an "agreement for legal services." Exhibit A, passim.

22. Pursuant to Va. Code§ 6.2-2015 Defendant was prohibited from charging a Mr. Inga a setup fee in excess of $75.

23. The agreement requires Mr. Inga to pay retainer of $17,721.40 of which 70% shall be collected before payments placed in a savings account. The agreement is incredibly front-loaded.

24. Pursuant to Va. Code§ 6.2-2015, Defendant was prohibited from charging Mr. Inga a monthly fee in excess of the lesser of fifteen percent of the total amount disbursed, or sixty dollars.

25. All funds are non-refundable unless the client exercised his right to cancel within 5 days of signing the agreement.

26. Pursuant to Va. Code §6.2-2014(1)(iii), Defendant was required to "highlight in bold type" the cost of the Debt Management Plan to Mr. Inga.

27. The cost of the Debt Management Plan is not highlighted in bold type. See Exhibit. A.

28. Pursuant to Va. Code§6.2-2014, Defendant was required to include a provision in the agreement that in the event of termination of the agreement, Mr. Inga would be entitled to either "all fees paid if terminated within five days of the date the… agreement is executed by the consumer or… all fees paid less the set- up fee if terminated more than five but less than 31 days after executed by the consumer."

29. The agreement contains no such provision.

30. Among the papers that Mr. Inga signed is a power of attorney appointing Defendant as his attorney-in-fact. A copy of this Power of Attorney is attached as Exhibit D.

31. Mr. Inga paid to Defendant $6,867 from April 2017 to December 2017.

32. Mr. Inga filed for Chapter 13 relief on November 28, 2017.

## COUNT I

### VIOLATION OF THE VIRGINIA CREDIT COUNSELING ACT
### PRIVATE RIGHT OF ACTION
### UNDER VIRGINIA CODE § 6.2-2023

33. Plaintiff incorporates by references allegations contained in paragraph nos. 1 through 32 herein.

34. By engaging in the business of providing or offering to provide a DMP to Plaintiff, CGI violated Virginia Code § 6.2-2001.

35. Even if CGI or any member of CGI directly overseeing the Plaintiff's DMP had a license pursuant to Chapter 20, Title 6.2 of the Code of Virginia, CGI violated Virginia Code § 6.2-2015 by charging and collecting from the Plaintiff amounts in excess of what is allowed under said statute.

36. Under § 6.2-2023, "Any person who suffers loss by reason of a violation of any provision of this chapter may bring a civil action to enforce such provision. Any person who is successful in such action shall recover reasonable attorney fees, expert witness fees, and court costs incurred by bringing such action."

## COUNT II
## VIOLATION OF VIRGINA FALSE ADVERTISING ACT

37. Paragraph 1-36 are incorporated by reference as if fully repeated herein.

38. Under Virginia Code §18.2-216, it is a Class 1 misdemeanor for any person or corporation who, with intent to sell or in anywise dispose of any service or anything offered by such person or corporation, directly or indirectly, to the public for sale or distribution or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, or to acquire title thereto, or any interest therein, makes, publishes, disseminates, circulates or places before the public, or causes, directly or indirectly to be made, published, disseminated, circulated or placed before the public, in a newspaper or other publications, or in the form of a book, notice, handbill, poster, blueprint, map, bill, tag,

label, circular, pamphlet or letter or in any other way, an advertisement of any sort regarding services or anything so offered to the public, which advertisement contains any promise, assertion, representation or statement of fact which is untrue, deceptive or misleading, or uses any other method, device or practice which is fraudulent, deceptive or misleading to induce the public to enter into any obligation.

39. CGI and Jack Howard Karpeles, chief executive officer of CGI, did directly or indirectly, review, confirm, approve and disseminate false and/or deceptive information on the World Wide Web and directly or indirectly offered debt settlement services to Plaintiff.

40. The advertisements Plaintiff reviewed online and that the defendants caused to be published on the World Wide Web are false and deceptive for the following reasons, among others:

- CGI was not licensed to provide its services to Virginia residents because it was not licensed here;
- CGI charged fees that were much higher than allowed by law;
- CGI required Plaintiff to default on her obligations; this imposed higher interest rates, late fees and penalties on her
- CGI did not disclose debt settlements, outside of bankruptcy, may result in the incurrence of discharge of indebtedness income for income tax purposes;
- CGI collects its fees prior to reaching a debt settlement with the creditor;
- The creditors with whom CGI must negotiate may not reach a settlement with CGI and as such may subject the consumer (Plaintiff) to judgments.

41. All of these representations by the defendants were deceptive in the sense that they caused Plaintiff to assume the debt settlement services offered by CGI were more salubrious than they were in actuality.

42. Under Code § 59.1-68.3 any person who suffers loss as the result of false advertising in violation of Code §18.2-216 may bring an individual action to recover damages

and reasonable attorneys' fees.

43. As a result of the Defendants' actions, Plaintiff suffered $6,867 in damages.

44. CGI and Jack Howard Karpeles' actions regarding Plaintiff's rights were so reckless, willful and wanton as to show a conscious disregard of Plaintiff's rights.

WHEREFORE, Pablo Jesus Inga, Sr., appearing by counsel, requests this Court to enter judgment against Centerdon Group, Inc. and Jack Howard Karpeles, jointly and severally, in the amount of $6,867 in compensatory damages and in the amount of $350,000.00 in punitive damages, together with interest from the date of judgment along with costs and that the Court grant such other relief as may be deemed equitable or just.

## COUNT III

### VIOLATION OF THE VIRGINIA CONSUMER PROTECTION ACT

45. Paragraphs 1-44 are incorporated by reference as if fully repeated herein.

46. By engaging in the business of providing or offering to provide a DMP to Plaintiff, CGI violated Virginia Code § 6.2-2001.

47. Even if CGI or any member of CGI directly overseeing Plaintiff's DMP had a license pursuant to Chapter 20, Title 6.2 of the Code of Virginia, CGI violated Virginia Code § 6.2-2015 by charging and collecting from Plaintiff amounts in excess of what is allowed under said statute.

48. Pursuant to Virginia Code §§ 6.2-2023 and 6.2-2025, CGI has engaged in a prohibited practice in accordance with § 59.1-200 and shall be subject to any and all of the

enforcement provisions of the Virginia Consumer Protection Act (§ 59.1-196 et seq.).

49.     CGI's actions were intentional as CGI chose not to register with the Virginia State Corporation Commission and the Virginia State Bar.

WHEREFORE, Pablo Jesus Inga, Sr., appearing by counsel, requests this Court to enter judgment against Centerdon Group, Inc. in the amount of $6,867 and that said amount be tripled to the amount of $20,601 as allowed by the statute along with interest April 7, 2017 with costs including any expert witness fees, reasonable attorneys' fees and any other relief as may be deemed equitable or just.

## COUNT IV
## FRAUDULENT TRANSFER

50.     Plaintiff incorporates by reference the allegations 1 to 49 herein by reference.

51.     The Defendants engaged in unlawful conduct by failing to obtain licenses in the Commonwealth of Virginia and by charging the Debtor in excess of the amounts allowed by law. Defendants charged Debtor $6,867 and should not have charged anything.

52.     The charges incurred by the Defendants were exorbitant.

53.     11 U.S.C. §548 provides in pertinent part:

> "(a)(1). The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date that such transfer was made or such obligation incurred, or became insolvent as a result of such transfer or obligation."

9

54.     The payment of approximately $16,905 over less than a two (2) year period for debt resolution services on behalf of the Debtor was excessive and the Debtor did not receive reasonably equivalent value from these services, especially Defendants were not licensed in Virginia and charged in excess of the amounts allowed by law.

55.     The Debtor was insolvent or rendered insolvent by the payment of the $6,867 to the Defendants, and the Defendants did not render reasonably equivalent value in exchange for the transfer of $6,867.

Accordingly, the transfers of $6,867 was fraudulent in violation of the provisions of 11 U.S.C. §548(a)(1).

                                                PABLO JESUS INGA, SR.
                                                By Counsel

Conway Law Group, PC


/s/ Martin C. Conway
Martin C. Conway (VSB #34334)
12934 Harbor Drive, Suite 107
Woodbridge, VA 22192
855-848-3011
571-285-3334 (facsimile)
*martin@conwaylegal.com*
Counsel for the Plaintiff